UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Kendra Haley,** ) | Civil Action No.:_____ |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| **Equifax Information Services, LLC,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

1. This is an action brought by Plaintiff, Kendra Haley, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

## JURISDICTION AND VENUE

4. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

§1681p, and 28 U.S.C. §1331 and §1332.

5.   Venue is proper in the Florence Division because the Plaintiff resides in Florence County and the Defendant transacted business in this division.

**PARTIES**

6.   Plaintiff, Kendra Haley, is a resident and citizen of the State of South Carolina, Florence County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

7.   Defendant Equifax Information Services, LLC ("Equifax") is a Georgia company registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

8.   Defendant Equifax is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

9.   Defendant disburses such consumer reports to third parties under contract for monetary compensation.

10.  Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible

accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable re-investigation of disputed information received from the Plaintiff.

11.     The Plaintiff alleges that Defendant repeatedly failed to block, delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, and failed to investigate Plaintiff's disputes.  Defendant repeatedly disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to be denied credit and subjected to further damages as set forth herein.

## FACTUAL ALLEGATIONS

12.     On or about October 14, 2022, Plaintiff's life came crashing down as she discovered that her husband had a gambling addiction and, in order to feed said addiction, had been opening fraudulent lines of credit in Plaintiff's name without her knowledge or consent, as well as fraudulently taking over at least one of Plaintiff's own credit card accounts.

13.     On or about November 22, 2022, Plaintiff received a copy of her Equifax credit report and found multiple fraudulent accounts were being reported as belonging to her. Additionally, Plaintiff discovered that her USAA account had been fraudulently used without her knowledge or permission.

14.     On or about December 12, 2022, Plaintiff sent a written dispute letter to Equifax in which she specifically informed Defendant that she had been the victim of identity theft and fraud, and that she had learned that her husband had opened numerous accounts and loans in her name without her permission to feed his gambling addiction ("First Dispute"). In her First Dispute, Plaintiff provided her full social security number, date of birth, and

address. Plaintiff requested that Defendant add a fraud alert to her credit report to prevent any additional fraud accounts from being opened in her name. Plaintiff disputed the reporting of four accounts as hers: a Synchrony Bank/Amazon account with account number ending 9565 ("Amazon Account"), a Sofi Bank account with account number ending 59 ("Sofi Account"), a Freedom Plus account with account number ending 9812 ("Freedom Account"), and a Prosper Marketplace account with account number ending 25 "Prosper Account"). Plaintiff stated that she did not open these accounts and that they were opened without her knowledge. Plaintiff also disputed a USAA account with account number ending 7070 ("USAA Account") as having been fraudulently used after her husband added himself to the USAA Account without Plaintiff's permission and maxed out the account. Plaintiff finally disputed an inquiry by First Heritage Credit as she had not applied for credit from First Heritage Credit.

15.     Equifax received Plaintiff's First Dispute and, on December 23, 2022, added a Fraud Alert to Plaintiff's credit file. Defendant also sent Plaintiff a postcard confirming that the Fraud Alert had beed added to her credit file.

16.     Thereafter, on or about December 25, 2022, Defendant sent Plaintiff a letter stating it was "unable to locate a credit file with the identification information [Plaintiff] provided" and requesting a copy of Plaintiff's Driver's License and Social Security Card.

17.     On January 11, 2023, Plaintiff returned Defendant's letter with her telephone number listed thereon, as well as copies of the front and back of her Driver's License and Social Security Card, via certified mail. Defendant received this information on January 18, 2023.

18.     Upon receipt of proof of Plaintiff's identity, instead of investigating the disputes contained within Plaintiff's First Dispute, Defendant simply forwarded Plaintiff a new copy of her credit report.

19.     On or about January 20, 2023, Plaintiff received the new copy of her Equifax credit report. The Amazon Account, Freedom Account, and Prosper Account all continued to appear on Plaintiff's Equifax credit report as belonging to her. The Freedom Account was being reported as a charge-off. The Prosper Account was being reported as 90-119 days late. Additionally, the fraudulent charges continued to be reported on Plaintiff's USAA Account. Finally, the First Heritage Credit inquiry remained on Plaintiff's Equifax credit report.

20.     On or about February 28, 2023, Plaintiff sent a second written dispute letter to Equifax in which she specifically informed Defendant that she had been the victim of identity theft and fraud and that she had learned that her husband had opened numerous accounts and loans in her name without her permission to feed his gambling addiction ("Second Dispute").  Plaintiff again stated the Freedom Account, Prosper Account, and Amazon Account had been fraudulently opened without her knowledge or permission. Plaintiff also continued to dispute the USAA Account, stating that the balance claimed due was the result of fraudulent charages made by Plaintiff's husband without Plaintiff's knowledge or permission.  Defendant received Plaintiff's Second Dispute on March 7, 2023.

21.     On or about March 12, 2023, Defendant sent Plaintiff a letter stating it had received Plaintiff's dispute regarding the USAA Account, Achieve (Freedom) Personal Loan, and Prosper Account, but because it was "currently processing your perviously submitted

dispute for this account(s); we will not be conducting further investigation into this particular account(s) at this time. The results of the investigation into your previously submitted dispute will be sent to you within 30 days of the date it was received by Equifax."

22. On or about March 13, 2023, Plaintiff received the results of Defendant's alleged reinvestigation into her Second Dispute. The Prosper Account, Freedom Account, and Amazon Account all continued to be reported on Plaintiff's Equifax credit report. Both the Prosper Account and Freedom Account were now being reported as charge offs. Additionally, the fraudulent charges continued to be reported on the USAA Account.

23. On or about March 27, 2023, Plaintiff sent a third dispute to Equifax in which she specifically informed Defendant that she had been the victim of identity theft and fraud, and that she had learned that her husband had opened numerous accounts and loans in her name without her permission to feed his gambling addiction ("Third Dispute"). Plaintiff again stated that the Freedom Account, Prosper Account, and Amazon Account were not her accounts and that these accounts had been opened without her knowledge or permission. Plaintiff also again disputed the balance being reported on the USAA Account as being the result of fraudulent charges made without her knowledge or permission. With her Third Dispute, Plaintiff included a copy of the police report she had filed in Florence County regarding the identity theft.

24. Defendant received Plaintiff's Third Dispute and police report on April 4, 2023. That very same day, Defendant sent Plaintiff a letter stating it had received Plaintiff's request to block information, but Defendant refused to do so. Defendant's letter informed Plaintiff that to block information under the FCRA, Plaintiff needed to provide proof of

her identity, the specific information that was the result of the identity theft, and a copy of a police report regarding the identity theft. Defendant had already received each of these items, but still refused to block the fraudulent accounts.

25.     Also on April 4, 2023, Defendant sent Plaintiff a seperate letter stating that it had received Plaintiff's dispute on the Achieve Personal Loan account but informing Plaintiff that it would not be investigating that dispute because it was "currently processing [her] perviously submitted dispute for this account(s); we will not be conducting further investigation into this particular account(s) at this time. The results of the investigation into your previously submitted dispute will be sent to you within 30 days of the date it was received by Equifax."

26.     On or about April 8, 2023, Defendant sent Plaintiff the results of her Third Dispute to Equifax wherein Defendant stated that two of the disputed items were not currently reporting on her credit file. Defendant did not provide any information on what the two disputed items were that were supposedly no longer appearing on Plaintiff's credit file. Defendant also informed Plaintiff that it had verified that the USAA account belonged to her and thus it remained on her credit file. Finally, Defendant stated that the Freedom Account had been modified to add additional information which stated "A temporary Update Freeze on File."

27.     Attached to the Defendant's investigation results, and sequentially page numbered with Defendant's letter, was a copy of Plaintiff's Equifax credit file as of April 8, 2023. While Defendant represented that two of the disputed items were no longer appearing on Plaintiff's Equifax credit file, upon review of the attached credit report, all of the disputed

accounts and inquiries remained. The Freedom Account, Prosper Account, and Amazon Account all continued to be incorrectly reported on Plaintiff's Equifax credit report as belonging to Plaintiff. The Prosper Account and Freedom Account continued to be reported as charged off accounts. Likewise, the fraudulent charges continued to be reported on the USAA Account.

28.     Following Defendant's response to Plaintiff's Third Dispute, Defendant forwarded a postcard to Plaintiff informing her it had successfully updated the extended fraud alert on her Equifax credit file.

29.     To date, Defendant continues to refuse to block the fraudulent information from Plaintiff's Equifax credit file, and continues to incorrectly report multiple fraudulent accounts as belonging to Plaintiff. Additionally, Defendant has failed and/or refused to remove the fraudulent inquiries.

30.     Defendant failed to make a reasonable investigation into Plaintiff's disputes.

31.     Upon receipt of the ACDV responses, Defendant simply accepted the furnishers' verifications of the Accounts and did not undertake to perform any investigation of its own.

32.     For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers' information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. Equifax Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL

11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

33. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

34. Equifax's knowing and repeated conduct warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

## COUNT ONE
(Fair Credit Reporting Act)

35. The Plaintiff adopts the averments and allegations of paragraphs 12 through 34 hereinbefore as if fully set forth herein.

36. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent

information, as required by 15 U.S.C. §1681c-2(a).

37. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

38. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

39. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

40. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

41. The Plaintiff adopts the averments and allegations of paragraphs 12 through 40 hereinbefore as if fully set forth herein.

42. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the

reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

43.     Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

44.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

45.     As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, increased cost of credit and/or insurance, anxiety, worry, fear, loss of sleep, family discord, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, embarrassment and mental anguish. Additionally, the damage to Plaintiff's credit score precluded her from seeking further credit opportunities and also caused her to not receive promotional offers of credit. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

46.     In addition, the Plaintiff has incurred litigation expenses, and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

47.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

48.     Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against

Defendant for the following:

A.  Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.  Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.  Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.  For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed. ID No. 10323

*/s/ William K. Geddings*
William K. Geddings, Fed. ID No. 12584
Attorneys for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

*/s/ Penny Hays Cauley*
Of Counsel

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Equifax Information Services, LLC
c/o Corporation Service Company - Registered Agent
508 Meeting Street
West Columbia, SC 29169